USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 9/17/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

QUINTIN J. BALLENTINE,

Plaintiff,

-v-

CARES FOR THE HOMELESS, *et al.*,

Defendant.

---------------------------------------------------------------- X

1:25-cv-3819-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Quintin Ballentine, who describes himself in the caption of his complaint as "Plaintiff, Pro Se, Proud Homosexual, and Recovering Mental Patient," was homeless. The Department of Homeless Services, an agency of the City of New York (the "City"), assigned him a place to live—a homeless shelter run by Defendant Cares for the Homeless ("CFTH"). According to Mr. Ballentine, CFTH staff members mocked his gender and his disability, then prevented him from using all of the shelter's services. CFTH did so, Mr. Ballentine alleges, despite an accommodation letter from the City.

Mr. Ballentine filed this action asserting that the City and CFTH violated his rights under the United States Constitution, the Americans with Disabilities Act, and the New York State and City human rights laws by discriminating against him on the basis of his disability, gender, and race. Both defendants moved to dismiss his claims. Mr. Ballentine's claims against the City fall short because he has not pleaded that the City engaged in any conduct that violated his rights. But because he has adequately pleaded that CFTH failed to provide him with a reasonable requested accommodation and discriminated against him on the basis of his disability and gender identity, his claims against CFTH under the ADA, and the New York State and New York City human rights laws may

proceed. Therefore, the City's motion to dismiss is GRANTED, and CFTH's motion to dismiss is GRANTED in part and DENIED in part.

## II. BACKGROUND[1]

### A. Factual Background

Mr. Ballentine is a New York citizen. TAC ¶ 7. He identifies himself as a being of mixed race. *Id.* He is a member of the LGBTQ community. *Id.* He suffers from bipolar I disorder. *Id.*

The City's Department of Homeless Services ("DHS") operates New York City's homeless shelter system. *Id.* ¶ 9. It contracts with non-profit organizations to operate homeless shelters throughout the city. *Id.* ¶ 8–9. One such contract is with CFTH. *Id.* ¶ 8. CFTH is a non-profit organization. *Id.* It operates the Blondell Avenue Men's Shelter ("Blondell") in the Bronx pursuant to a contract with DHS. *Id.*

Mr. Ballentine has been enrolled with DHS since 2025. *Id.* ¶ 10. As a result of his bipolar I diagnosis, DHS issued him an accommodation letter, which "authoriz[es] quiet placement" in a DHS facility, "timely access to stored medication," and "restroom access upon request." *Id.*

On April 15, 2025, DHS placed Mr. Ballentine at Blondell. *Id.* ¶ 11. Mr. Ballentine provided his accommodation letter to Blondell staff during the intake process. *Id.* He also informed Blondell

---

[1] The facts relevant to this motion are drawn primarily from Plaintiff's third amended complaint, Dkt. No. 48 ("TAC"), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given Plaintiff's *pro se* status, the Court considers supplemental factual allegations made by Plaintiff in his initial complaint, Dkt. No. 1, his first amended complaint, Dkt. No. 7, and his second amended complaint, Dkt. No. 26. To the extent that there are any additional facts set forth in Plaintiff's filings in opposition to Defendants' motions, Dkt. No. 58 ("Decl."); Dkt. No. 59 ("Opp."); Dkt. No. 64 ("Sur-reply"), it is well settled that a party may not amend its pleadings in its briefing papers. *See Avillan v. Donahoe,* 483 Fed. Appx. 637, 639 (2d Cir. 2012) (summary order) (citing *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998)). Still, the Court has the discretion to consider factual assertions contained in motion papers presented by a *pro se* litigant. *See, e.g.*, *Collins v. Goord*, 438 F. Supp. 2d 399, 403 & n.1 (S.D.N.Y. 2006) (deeming factual allegations contained in *pro se* plaintiff's brief to "supplement" his pleading). The Court declines to exercise its discretion in that way in this case. Plaintiff's opposition brief and his unauthorized sur-reply clock in at over 150 pages in length in the aggregate. They bear all the emblems of having been drafted by, or with very substantial assistance from, a generative large language model. The Court declines to consider any facts included in those documents as a modification of Plaintiff's pleadings. The special solicitude that sometimes drives courts to deviate from the general rule that a party may not amend its pleading through its briefing for the benefit of a *pro se* litigant is not compelling when the briefing is the product of a large language model.

staff that he had experienced harassment as a result of his LGBTQ status in other shelters. *Id.* On April 12, prior to his placement at Blondell, Mr. Ballentine emailed DHS's ADA coordinator and CFTH's program director "reporting homophobic harassment and requesting reassignment and protective measures." *Id.* ¶ 12.

On April 23, 2025, CFTH staff "mocked Mr. Ballentine's gender expression . . . ." *Id.* ¶ 13. They used "anti-LGBTQ slurs" and told other residents to "keep an eye on him." *Id.* Shortly thereafter, five residents of the shelter assaulted Mr. Ballentine, "striking his face and ribs, causing a split lip and contusions." *Id.* The assault lasted approximately nine minutes. *Id.* CFTH staff did not intervene; instead, they stood by and laughed. *Id.* According to Mr. Ballentine, the entire incident was captured by Blondell's security cameras. *Id.*

After the assault, Blondell staff "refused to provide medical attention" or "document the incident." *Id.* ¶ 14. Instead, they removed him from the shelter. *Id.* From 11:05 p.m. to 2:58 a.m. Mr. Ballentine was left outside. *Id.* The temperature was in the low 50s. *Id.*

Blondell staff members allowed Mr. Ballentine to re-enter the lobby of the shelter at 2:58 a.m. *Id.* ¶ 15. For the next 17 hours, Mr. Ballentine alleges, he was "confined" to the shelter's lobby. Staff "den[ied] restroom access for extended periods," "withh[eld] food and water," and "refus[ed] access to [his] prescribed medication." *Id.* Blondell staff "mocked him with slurs, including 'bipolar boy.'" *Id.*

At approximately 6:30 p.m. on April 24, 2025, Mr. Ballentine "stated he would file complaints with DHS, 311, and the [New York State] Division of Human Rights." *Id.* ¶ 16. Within minutes, a "CFTH supervisor radioed for an" emergency medical services ("EMS") wellness check, "falsely labeling Plaintiff as 'violent' and 'psychotic' . . . ." *Id.* According to Mr. Ballentine, video of the events in the lobby shows him "seated and calm." *Id.*

In response to the call, police officers and EMS staff came to Blondell. *Id.* ¶ 17. CFTH staff

"insisted" that Mr. Ballentine be taken to the hospital, even though, Mr. Ballentine alleges, there were "no signs of agitation." *Id.* Mr. Ballentine complied "to avoid further confrontation." *Id.* He was transported to Jacobi Hospital ("Jacobi"). *Id.*

At Jacobi, medical staff evaluated Mr. Ballentine. *Id.* ¶ 17. He was discharged after three hours "with no psychiatric emergency noted." *Id.* According to Mr. Ballentine, while at Jacobi, a nurse told him that Blondell "was known for punitive EMS calls against complaining residents." *Id.*

Mr. Ballentine alleges that his experience at Blondell is part of a broader pattern that he has experienced across the shelter system. He alleges that he "filed at least seven written complaints with DHS across multiple shelters regarding anti-LGBTQ harassment and ADA accommodation denials." *Id.* ¶ 18. He also alleges that there are DHS audits from 2023 to 2025 that have flagged Blondell for same type of conduct allegedly affected him: "inadequate incident documentation, failure to preserve surveillance footage, and untimely ADA responses." *Id.* ¶ 19. Mr. Ballentine alleges that despite these findings, DHS has "renewed CFTH's contract without imposing remedial training or discipline." *Id.*

As a result of the ordeal that he allegedly experienced, Mr. Ballentine suffered "physical injuries (split lip, rib contusion)," "emotional distress (panic attacks, sleep disruption, increased depression)," and "economic losses (missed work shifts)." *Id.* ¶ 20.

### B. Procedural History

Mr. Ballentine, proceeding *pro se*, filed his initial complaint on May 4, 2025. Dkt. No. 1. He was granted leave to pursue this case *in forma pauperis* on May 22, 2025. Dkt. No. 6. Shortly thereafter, on May 28, 2025, Mr. Ballentine filed an amended complaint. Dkt. No. 7. Mr. Ballentine requested leave to file an amended complaint on September 26, 2025. Dkt. No. 24. The Court denied that request because Mr. Ballentine had not presented the proposed amended complaint to the Court for review. Dkt. No. 25. Mr. Ballentine filed his second amended complaint on October

1, 2025 without Court approval. Dkt. No. 26.

CFTH moved to dismiss Mr. Ballentine's action on October 23, 2025. Dkt. No. 28. The City moved to dismiss the action on January 2, 2026. Dkt. No. 46. On January 21, 2026, in response to the City's motion to dismiss, Mr. Ballentine amended his complaint once more. *See* TAC. The third amended complaint is the operative complaint.

CFTH filed its motion to dismiss the third amended complaint on February 18, 2026. Dkt. No. 51 (notice of motion); Dkt. No. 52 ("CFTH Mem."). CFTH pointed to the "abundance of inflammatory, profane and offensive language wholly inappropriate for a pleading filed in Court." CFTH Mem. at 7.[2] CFTH argued that, as a non-profit entity working under contract with the City, it was not a state actor, and could not therefore, be sued under 42 U.S.C. § 1983 ("Section 1983"). *Id.* at 9–10. CFTH argued that Mr. Ballentine's claims under the Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.* (the "ADA") fail for a similar reason—it was not a "public entity." *Id.* at 12.

CFTH argued that Mr. Ballentine's claims for discrimination based on his disability under the ADA, the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* (the "Rehabilitation Act"), the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL"), were not adequately pleaded because, CFTH asserted, "Plaintiff fails to allege that any disability was a reason motivating Defendant's alleged conduct." CFTH Mem. at 14. CFTH argued that Plaintiff's claims for discrimination on the basis of his gender and race also failed because the complaint does not contain "a single allegation of conduct by Defendant demonstrative of any sexual orientation or racial animus." *Id.* at 14–15. CFTH also argued that Plaintiff's claims for retaliation are inadequately pleaded because he failed to plead that he engaged in a protected activity. *Id.* at 15.

---

[2] The Court's description of the facts of the case described above omits a summary of those statements.

The City of New York filed its motion to dismiss on February 18, 2026. Dkt. No. 54 (notice of motion); Dkt. No. 55 ("City Mem."). The City argued that the complaint failed to plead a claim against the City under Section 1983 because the complaint did not plead the existence of a municipal policy that resulted in the alleged violation of Plaintiff's constitutional rights, or that any official of the City was directly involved in those violations. City Mem. at 4–8. The City also argued that Mr. Ballentine had not adequately pleaded that his rights under the Equal Protection Clause of the United States Constitution had been violated, because his claim was based only on a "bald assertion that he is a member of a protected class . . . ." *Id.* at 10.

Like CFTH, the City argued that Mr. Ballentine's claims for violation of the ADA and the Rehabilitation Act based on his alleged disability were inadequately pleaded because "the allegation that such alleged deprivations occurred because of his disability are conclusory." *Id.* at 12–13. The City argued that Mr. Ballentine's claims against it under the NYSHRL and the NYCHRL should also be dismissed because his allegations were conclusory. *Id.* at 13. And, it argued, his retaliation claims were unsupported by allegations describing "any constitutionally protected activity in which he was engaged, [or] . . . allege facts demonstrating that Defendants' actions would have reasonably deterred a person from engaging in such activity." *Id.*

Mr. Ballentine filed several documents in response to the defendants' motions to dismiss. Dkt. No. 57 ("Opp."); Dkt. No. 58 (declaration by Mr. Ballentine); Dkt. No. 59 ("Opp. II"). The first memorandum of law presented by Mr. Ballentine is over 80 pages in length. It bears clear indicators that it was drafted by, or with substantial assistance from, a large language model. Not all of the arguments presented in the brief respond to arguments presented by the defendants. Instead, the generator of the document anticipated possible arguments and responded to them. *See, e.g.*, Opp. at 26 ("the City will likely argue"; "The City may also contend"). Across its span, the lengthy brief contains responses to the arguments presented by the defendants in their motions. It and the

accompanying shorter memorandum of law, Opp. II, also identify other state law causes of action purportedly asserted in the complaint which were not identified in the complaint, and were not, therefore, addressed in the defendants' briefs: purported claims for intentional infliction of emotional distress ("IIED"), assault under New York Penal Law § 120.00(1) and (2) ("Penal Law Section 120.00"), and negligent supervision. Opp. I at 79; Opp. II at 4.

CFTH's reply brief, filed on April 1, 2026, largely reiterated the arguments presented in its moving brief. Dkt. No. 62. CFTH also responded to the additional causes of action identified in Mr. Ballentine's opposition papers. At the outset, CFTH argued that Penal Law Section 120.00 was a criminal statute and did not provide for a private right of action. *Id.* at 9. The IIED claim failed, CFTH argued, because the standard for pleading such a claim is very high and "Plaintiff has not pled any facts to raise a plausible inference that Defendant acted outrageously, beyond all bound of decency, and with the intent to cause Plaintiff emotional distress." *Id.* CFTH argued that the claim for negligent supervision failed because Mr. Ballentine had failed to plead that CFTH was aware that any of its employees had the propensity to commit the acts alleged. *Id.* at 9–10.

The City's reply brief reiterated the City's initial arguments in support of its motion to dismiss, while responding to Mr. Ballentine's opposition briefing. Dkt. No. 63. The City responded to Mr. Ballentine's suggestion that his complaint encompassed claims for IIED, negligent supervision, and a violation of Penal Law Section 120.00, by pointing to the requirement that a notice of claim be filed in order to pursue a tort claim against the City. *Id.* at 6. Because Mr. Ballentine did not plead that such a notice had been submitted, any implied tort-based causes of action should be dismissed. *Id.* at 6–7.

Mr. Ballentine filed a sur-reply brief on May 14, 2026. Dkt. No. 64. The Sur-reply brief was not authorized by the Court. Like Mr. Balentine's opposition brief, Opp. I, the Sur-reply bears the indicators of having been drafted by a large language model. It is over 70 pages in length. It does

not directly respond to the reply briefing. Largely, the author of the document argues why the initial complaint should be read to state a claim.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Second, a court must determine "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Ultimately, determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . .") (citation omitted). Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss . . . ." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant

rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

Because Plaintiff is proceeding *in forma pauperis*, the Court has an obligation to determine whether to dismiss portions of his complaint *sua sponte*. The Court must dismiss a complaint filed *in forma pauperis* that "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "As under the 12(b)(6) standard, [a plaintiff's] *pro se* status obligates [the] Court to read [the plaintiff's] papers liberally and to interpret them as raising the strongest arguments they suggest." *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 125 (E.D.N.Y. 2011).

## IV. DISCUSSION

The Court liberally construes the complaint to raise a variety of claims against each of the defendants. First, the complaint alleges that both CFTH and the City violated Section 1983 based on alleged violations of Plaintiff's rights under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Second, the complaint alleges that both CFTH and the City violated the ADA and the Rehabilitation Act by discriminating against Mr. Ballentine on the basis of his disability. Third, the complaint alleges that CFTH and the City retaliated against Mr. Ballentine in violation of the ADA and the Rehabilitation Act. Fourth, the complaint alleges that CFTH and the City violated Title VI of the Civil Rights Act by discriminating against Mr. Ballentine on the basis of his race. Fifth, the complaint alleges that CFTH and the City each violated the NYSHRL and the NYCHRL by discriminating against him on

the basis of his disability, race, and gender identity. Sixth, the complaint alleges that each Defendant retaliated against Mr. Ballentine in violation of the NYSHRL and the NYSHRL. Seventh, the complaint alleges that each Defendant violated Penal Law Section 120.00. Eighth, the complaint alleges that CFTH is responsible for negligent supervision of CFTH staff in violation of New York common law. And ninth, the complaint alleges that each Defendant should be held liable for intentional infliction of emotional distress in violation of New York common law. The Court addresses each of these causes of action below.

**A. Section 1983 Claims**

Plaintiff has not adequately pleaded a Section 1983 claim against either CFTH or the City. CFTH is not plausibly pleaded to have been a state actor. As a result, it cannot be held liable under Section 1983. And Plaintiff's allegations do not adequately plead that the incident was the result of a City policy or the conduct of a municipal policymaker, as required to impose liability on it.

1. **CFTH, a Non-State Actor, Is Not Liable Under Section 1983**

Because Plaintiff has not alleged that CFTH is a state actor, he has not plausibly pleaded a cause of action against CFTH under Section 1983. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Id.* (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)). State action requires, among other things, that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

CFTH is a private citizen. Accordingly, its actions may be attributable to the state only in

"limited circumstances." *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019); *see also Lurch v. City of New York*, No. 19-CV-11253 (AJN), 2021 WL 1226927, at *3 (S.D.N.Y. Mar. 31, 2021) ("[H]olding a private actor liable for constitutional violations is a high bar"). "Three main tests have emerged" to determine whether the actions of a private party may be "fairly attributable to the state." *Fabrikant*, 691 F.3d at 207 (cleaned up). They are:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Id.* (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "Mere approval of or acquiescence in the initiatives of a private party" will not suffice to meet these tests. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant*, 691 F.3d at 207 (quoting *Sullivan*, 526 U.S. at 50).

The complaint does not plausibly plead that CFTH's actions are attributable to the state under any of the tests recognized by the Second Circuit in *Sybalski*. As it relates to the "compulsion test," Mr. Ballentine does not plead any facts to establish that the "State required [the defendant] or its employees to take any of the actions at issue in this case." *Oakley v. Fed'n Emp. & Guidance Servs., Inc.*, No. 10-CV-7739 (JSR), 2012 WL 20534, at *3 (S.D.N.Y. Jan. 4, 2012). Indeed, he pleads that the decision not to document his assault was in violation of "DHS policy" and that CFTH's decision to deny him accommodations were in contravention of their obligations under the accommodation letter issued by DHS. TAC ¶¶ 14–16. Similarly, as it relates to the "joint action" or "close nexus" test, Mr. Ballentine has not pleaded that the state has provided "significant encouragement" to CFTH such that the complained-of conduct was action undertaken under color of state law.

*Sybalski*, 546 F.3d at 257.[3]

As it relates to the "public function" test, Mr. Ballentine does not plausibly plead that CFTH was performing a public function. Mr. Ballentine argues that CFTH is a state actor because it provides housing under a contract with DHS. However, "the provision of housing to the homeless is not a public function." *Levine v. Project Renewal*, No. 24-CV-0616 (LTS), 2024 WL 773722, at *5 (S.D.N.Y. Feb. 26, 2024). Thus, "[c]ourts in this Circuit have held that '[t]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors.'" *Etuk v. City of New York*, No. 24-CV-4957 (KPF), 2026 WL 366763, at *10 (S.D.N.Y. Feb. 10, 2026) (collecting cases). Therefore, Mr. Ballentine has not plausibly pleaded that CFTH is a state actor and has not pleaded a cause of action against it under Section 1983.

### 2. The City Is Not Liable Under Section 1983 Because Monell Liability Is Not Adequately Pleaded

The complaint does not plausibly plead that the City is responsible for the conduct of any of the people who allegedly violated Mr. Ballentine's constitutional rights. Only the City of New York, not any of its employees, is named as a defendant. The Court construes Plaintiff's Section 1983 claim against the City as seeking to hold the City liable for the unconstitutional acts of its employees under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The only individuals described in Mr. Ballentine's complaint who are plausibly pleaded to be employees of the City are the EMS staff and NYPD officers who allegedly transported him to Jacobi.[4]

---

[3] To the extent Mr. Ballentine's opposition can be read to argue that DHS's regulation of homeless shelters and funding for them through its contract with CFTH renders CFTH a state actor, this is insufficient. "To satisfy the joint action test, a plaintiff cannot merely allege that the State provides 'substantial funding of the activities of a private entity.'" *Oakley*, 2012 WL 20534, at *4 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982)).

[4] The complaint's allegations do not support an inference that CFTH staff members described in the complaint are City employees. Even if they were, the complaint does not establish *Monell* liability with respect to them.

It is well established that the City cannot be held liable under Section 1983 pursuant to a theory of *respondeat superior*. *See Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983); *see also Monell* 436 U.S. 690–94 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) ("[A] municipality cannot be made liable [under Section 1983] by application of the doctrine of *respondeat superior*."). Rather, "liability under § 1983 is governed by the principles set forth in *Monell*." *Simpkins v. Bellevue Hosp.*, 832 F. Supp. 69, 73 (S.D.N.Y. 1993) (citing *Rookard*, 710 F.2d at 44–45). To establish a claim under *Monell*, a plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks and citation omitted). Therefore, to state a claim under Section 1983 against a municipal corporation, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and alterations omitted); *see Monell*, 436 U.S. at 690–91.

Plaintiff has not adequately pleaded the existence of a policy or custom that would support a finding of liability under *Monell*. A plaintiff may satisfy the "policy or custom" requirement in one of four ways: by proving the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of the plaintiff's rights, *see Pembaur*, 475 U.S. at 483–84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690–91; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). A single occurrence does not give rise to liability unless caused by an official policy or the decision of a final policymaker. *Roe*, 542 F.3d at 37; *see also Pembaur*, 475 U.S. at 480.

Plaintiff does not allege the existence of a formal policy or an unwritten "custom or usage" that led to any violation of his rights. Plaintiff's allegations regarding the single incident involving City employees does not establish a persistent practice. Plaintiff also has not alleged that the City is liable because it failed to properly train or supervise its employees.

Moreover, as the City argues, the complaint does not adequately plead the existence of an underlying violation of Plaintiff's rights by the City's employees. "[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race . . . ." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (internal quotation marks omitted). "[R]acial discrimination under the Equal Protection Clause requires a racially discriminatory purpose," *Howard v. Senkowski*, 986 F.2d 24, 26 (2d Cir. 1993), and "the test is whether a discriminatory purpose has been a *motivating factor* in the decision." *Id.* at 27 (internal quotation marks omitted). Plaintiff argues that his complaint alleges that the actions of CFTH staff discriminated against him on the basis of his race, but he identifies no City employee that was involved in that conduct. As a result, he has not pleaded a violation of the Equal Protection Clause by any City employee.

Nor has he pleaded a violation of the Fourth Amendment. "The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation." *Fla. v. Bostick*, 501 U.S. 429, 439 (1991). Mr. Ballentine alleges that CFTH staff, not NYPD officers or EMS staff "insisted on hospital transport." TAC ¶ 17. Mr. Ballentine does not plead that the City employees used any force or threat to implement his transport. To the contrary, Mr. Ballentine alleges that he "agreed" to the transport "to avoid further confrontation" with insistent CFTH staff. *Id.* Therefore, he has not adequately pleaded an underlying constitutional violation in support of his Section 1983 claim against the City.

### B. Disability Discrimination Claims Under the ADA and the Rehabilitation Act

#### 1. Plaintiff Adequately Pleads that CFTH Violated Title III of the ADA by Failing to Accommodate His Disability

Plaintiff has adequately pleaded a violation of Title III of the ADA because he has plausibly pleaded that he was denied an accommodation by CFTH as a result of his disability. At the outset, the Court construes Mr. Ballentine's complaint liberally to assert a claim under Title III of the ADA.[5]

Section 302(a) of the ADA ("Section 302(a)") provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).[6] "To state a claim under Title III, [a plaintiff] must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing, *inter alia*, 42 U.S.C. § 12182(a)).

---

[5] The complaint asserts that Plaintiff's claim under the ADA is asserted only under Title II. TAC ¶ 25. Title II, however, only apples to a "public entity." 42 U.S.C.A. § 12132. The complaint does not plead that CFTH is a public entity. The statute defines the term "public entity" to include "(A) any State or local government" and "(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* "The Second Circuit has held that the phrase 'instrumentality of a State' 'suggests that to be an instrumentality, an entity must somehow belong to the government or have been created by it,' and 'is thus a creature of the municipality or state whose ends it serves.'" *Lopez v. City of New York*, No. 17-CV-3014 (VEC) (AJP), 2017 WL 4342203, at *14 (S.D.N.Y. Sept. 28, 2017), report and recommendation adopted, No. 17-CV-3014 (VEC), 2018 WL 1371164 (S.D.N.Y. Mar. 15, 2018) (quoting *Green v. City of N.Y.*, 465 F.3d 65, 79 (2d Cir. 2006)). Without more, an allegation that a private company is operating pursuant to a contract with the government does not establish that the private company is a creature of the state. *See Green*, 465 F.3d at 79 ("A private hospital performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity."). The complaint's allegation that CFTH contracts with the City does not adequately plead that it is a public entity. Although Plaintiff cannot make out a claim under Title II on these facts, the Court must construe his claim to raise another cause of action reasonably inferred from the complaint. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154 (2d Cir. 2017). Here, the complaint can be construed to assert a claim against CFTH under Title III of the statute.

[6] Section 302(a) is a subsection of Title III of the ADA.

Neither Defendant has argued that Mr. Ballentine has failed to adequately plead that he is disabled within the meaning of the ADA. The Court therefore assumes that he has.[7] Plaintiff has pleaded the second element of the claim—that CFTH, a private entity, operated a place of public accommodation. A privately operated homeless shelter is a place of public accommodation under the statute. *See* 42 U.S.C. § 12181(7)(K) (defining "public accommodation" to include "homeless shelters").

Mr. Ballentine has also adequately pleaded that CFTH denied him full and equal access to its services. He alleges that he provided CFTH staff an accommodation letter at intake that authorized "timely access to stored medication, and restroom access upon request due to his bipolar I disorder." TAC ¶ 10. Nonetheless, he alleges, CFTH withheld medication entrusted to its staff and delayed restroom access for an extended period. TAC ¶ 15. CFTH does not argue that any of these elements of the cause of action have not been adequately pleaded.

Plaintiff's allegations also support a plausible inference that CFTH denied him an accommodation because of Mr. Ballentine's disability. Allegedly, while withholding the requested accommodations, CFTH staff mocked Mr. Ballentine, calling him "bipolar boy." TAC ¶ 15. Contrary to CFTH's argument that the allegations in the complaint do not allow one to infer that staff was motivated by Mr. Ballentine's disability, the alleged overt mockery of Mr. Ballentine's

[7] Both the ADA and the Rehabilitation Act "define a 'disabled individual' as one who '(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.'" *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (quoting 29 U.S.C. § 705(20)(B) and 42 U.S.C. § 12102(2)). Because neither party challenges the sufficiency of Plaintiff's allegation that he is disabled, the Court assumes that he has adequately pleaded that element of his claim. However, the Court pauses to note that "[t]o successfully plead a qualifying disability under the ADA, a plaintiff 'must allege which major life activity or activities their impairment substantially affects.'" *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2020 WL 2836760, at *9 (S.D.N.Y. May 31, 2020) (quoting *Laface v. E. Suffolk BOCES*, No. 2:18-CV-1314 (ADS) (AKT), 2020 WL 2489774, at *10 (E.D.N.Y. May 18, 2020)). Mr. Ballentine alleges that he has been diagnosed with bipolar I disorder, that he is taking some medication as a result, and that he has an accommodation letter from DHS. TAC ¶¶ 7, 10. But the complaint contains no allegations regarding the specific impact of that disability on his life activities. *Cf. Durr v. Slator*, 558 F. Supp. 3d 1 (N.D.N.Y. 2021) (finding plaintiff with diagnosis of bipolar I disorder to have pleaded his disability after analyzing specific allegations of the impact of the illness on plaintiff's major life activities).

disability while engaging in the alleged discriminatory conduct soundly supports the inference that staff knew of his disability and acted because of it. *Cf. Levine v. Project Renewal*, No. 24-CV-0616 (LTS), 2024 WL 773722, at *3 (S.D.N.Y. Feb. 26, 2024) (holding that failure to accommodate claim was insufficiently pleaded because there was no indication that staff members knew about the Plaintiff's disabilities and, therefore, that he was requesting accommodations for those disabilities). Accordingly, Plaintiff's Title III claim against CFTH is adequately pleaded.

**2. Plaintiff Does Not Plead a Violation of the Rehabilitation Act by CFTH, Which is Not Plausibly Alleged to be Federally Funded**

Mr. Ballentine has not adequately pleaded a claim against CFTH under the Rehabilitation Act because the complaint does not contain well-pleaded facts that show that the program complained of was federally funded. The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance or under any program or activity conducted by any [e]xecutive agency." 29 U.S.C. § 794(a). Thus, in order to plead a violation of Section 504 of the Rehabilitation Act, a plaintiff must plead, among other things, that "the program denying the plaintiff participation receives federal financial assistance." *Rothschild v. Grottenthaler*, 907 F.2d 286, 290 (2d Cir. 1990). The statutory text clearly "limits the ban on discrimination to the specific program that receives federal funds." *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 636 (1984).

The complaint does not plausibly allege that the program at CFTH responsible for the discriminatory treatment of Mr. Ballentine's disability received federal funding. The complaint alleges only the following: "Defendants, as recipients of federal funds, discriminated against Plaintiff based on his disability by denying accommodations and access to services, in violation of Section 504 of the Rehabilitation Act." TAC ¶ 26. This allegation does not meet Plaintiff's pleading burden for two principal reasons. First, it is conclusory. It is a "threadbare recital" of one of the

elements of the claim. *See Harris*, 572 F.3d at 72; *see also Leute v. Int'l Bus. Machines Corp.*, No. 2:25-CV-0656 (CR), 2026 WL 63448, at *3 (D. Vt. Jan. 8, 2026) (holding that the plaintiff's "conclusory allegation regarding 'federal funding' is insufficient to plausibly" plead a violation of the Rehabilitation Act). And second, the allegation asserts merely that CFTH receives federal funding; it does not plead that the relevant program received such funding. Because the complaint does not adequately plead that the relevant program of CFTH is federally funded, the Rehabilitation Act claim against CFTH must be dismissed.

### 3. The Complaint Does Not Adequately Plead that the City Discriminated Against Plaintiff Because of His Disability

Plaintiff has not adequately pleaded a claim against the City under either the ADA or the Rehabilitation Act because the complaint does not plead that the City or any of its employees discriminated against him. "Both Title II of the ADA and § 504 of the Rehabilitation Act protect the rights of disabled individuals to participate in state-administered or funded services." *Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"To state a prima facie claim under either provision, a plaintiff must establish (1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability." *Davis*, 821 F.3d at 259 (internal

quotation and citation omitted).[8] "A plaintiff may base her discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Id.* at 260.

Plaintiff has not adequately pleaded that the City violated his rights under any of those three theories of liability. Although Plaintiff has pleaded that CFTH denied him an accommodation, he has not pleaded that the City did so. "In reviewing a reasonable accommodation claim, we ask whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled.'" *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (internal quotation omitted). The complaint alleges that CFTH denied Mr. Ballentine an accommodation. But it does not tie the City to that decision. To the contrary, the complaint alleges that DHS—the City agency—issued him an accommodation letter. TAC ¶ 10. CFTH's alleged failure to honor that letter is not attributed to the City.

Similarly, although the complaint alleges that CFTH staff mocked Mr. Ballentine, calling him "bipolar boy," the complaint does not allege that any representative of the City discriminated against Mr. Ballentine. TAC ¶ 15. Given the absence of allegations that the City—rather than CFTH—discriminated against Mr. Ballentine on the basis of his disability, Mr. Ballentine's claims against the City under the ADA and the Rehabilitation Act are inadequately pleaded. *See, e.g.*, *Smith v. City of New York*, No. 15-CV-4493 (RJS), 2016 WL 4574924, at *9 (S.D.N.Y. Sept. 1, 2016) (Sullivan, J.) (holding that claims against the City should be dismissed "in light of the fact that Plaintiff does not allege any facts to suggest that the City discriminated against her or denied her any opportunity or benefit").

### C. Retaliation Claims Under the ADA and the Rehabilitation Act

---

[8] As described above, to plead a violation of the Rehabilitation Act, a plaintiff must also plead that the relevant program was federally funded. The deficiencies in the complaint's allegations identified above regarding the federal funding of CFTH apply equally to Plaintiff's claim against the City.

### 1. Plaintiff Adequately Pleads that CFTH Retaliated Against Him in Violation of the ADA and the Rehabilitation Act

Plaintiff has adequately pleaded that CFTH retaliated against him in violation of the ADA and the Rehabilitation Act, because CFTH requested that Mr. Ballentine be transported to a hospital after he requested an accommodation and threatened to complain about its denial. Each of the ADA and the Rehabilitation Act provide a private cause of action for acts of retaliation. "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C.A. § 12203. The anti-retaliation provision of the ADA is incorporated into the Rehabilitation Act. 29 U.S.C.A. § 794(d).

"[T]he elements of a retaliation claim under either [the Rehabilitation Act] or the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal quotations omitted).

A plaintiff engages in protected activity when he "oppose[s]" conduct prohibited under the statute. 42 U.S.C.A. § 12203. "[A]ttempts to assert . . . rights against discrimination are protected activities." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). "[S]eeking reasonable accommodation . . . constitutes protected activity under Section 504/ADA." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002). "With respect to the first element of a retaliation claim, participation in a protected activity . . . a plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the [defendant] violated that law." *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999) (internal quotation omitted).

With respect to the fourth element of a retaliation claim, "[a] causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky*, 921 F.3d at 353 (internal quotations omitted).

Plaintiff adequately pleads that he engaged in a protected activity under the ADA and the Rehabilitation Act: he requested that CFTH honor his accommodation request. TAC ¶ 15. He also told CFTH that he was going to "file complaints with DHS, 311 and the NYS Division of Human Rights." *Id.* ¶ 16. It is reasonable to infer from these allegations that CFTH staff were aware of the protected activity. Plaintiff also adequately pleads that CFTH engaged in an adverse action that was caused by his complaint. Less than 15 minutes after his complaint, CFTH staff called for him to be transported away by EMS, "falsely labeling Plaintiff as 'violent' and 'psychotic' . . . ." *Id.*

2. **Plaintiff Does Not Adequately Plead that the City Retaliated Against Him in Violation of the ADA and the Rehabilitation Act**

By contrast, Plaintiff has not adequately pleaded that the City retaliated against him in violation of the ADA and the Rehabilitation Act because he does not plead that he was subject to an adverse action caused by any protected activity of which the City was aware. Plaintiff does not allege that the City or any of its officers was aware of his request for an accommodation from CFTH. And while he informed CFTH staff that he was going to file complaints about their behavior, he does not allege that he made the complaints or that the City was aware of them.

That leaves only the following allegations of a potential protected activity of which the City was aware: "Between February 2024 and May 2025, Plaintiff filed at least seven written complaints with DHS across multiple shelters regarding anti-LGBTQ harassment and ADA accommodation denials. DHS provided only boilerplate responses and took no corrective action." TAC ¶ 18. The

Court assumes without holding that this allegation adequately pleads an actionable protected activity known to the City. But the complaint alleges no adverse action by the City at all—certainly not one caused by these complaints. Therefore, the complaint does not adequately plead a retaliation claim against the City under the ADA or the Rehabilitation Act.

**D. Title VI of the Civil Rights Act**

The complaint does not adequately plead a claim against either Defendant under Title VI of the Civil Rights Act, because Plaintiff does not plead that he was discriminated against on the basis of his race or that the conduct described occurred in a program covered by Title VI. Title VI provides that "[n]o person in the United States shall, on the ground of race . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A violation of Title VI is demonstrated only by proof of intentional discrimination. *See Guardians Ass'n v. Civil Serv. Comm'n of the City of N.Y.*, 463 U.S. 582, 584 (1983). "To state a claim under Title VI, a plaintiff must plausibly allege not only that the defendant was an entity receiving federal funding and engaged in intentional discrimination based on the plaintiff's race, color, or national origin, but also that the federal funds have been made available primarily for providing employment." *Sulehria v. New York*, No. 13-CV-6990 (AJN), 2014 WL 4716084, at *5 (S.D.N.Y. Sept. 19, 2014) (Nathan, J.) (citing *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981)).

The complaint's allegations regarding Defendants' alleged discrimination against Mr. Ballentine on the basis of his race are entirely conclusory. He identifies himself as a person of "mixed-race." TAC ¶ 7. Then he alleges that "Defendants, operating a federally funded program, discriminated against Plaintiff based on his mixed-race status through disparate treatment and harassment . . . ." *Id.* ¶ 27. These allegations are merely restatements of the matters one must prove to state a discrimination claim; they do not plausibly allege facts that would tend to show

discrimination.

Moreover, the complaint does not adequately plead that Title VI is applicable here. Plaintiff alleges in a conclusory manner that Defendants operated "a federally funded program . . . ." *Id.* But it does not allege that a particular program was involved in any discriminatory acts, or that any relevant program was funded with "federal funds . . . made available primarily for providing employment." *Sulehria*, 2014 WL 4716084, at *6. Therefore, the complaint fails to state a claim against either Defendant under Title VI of the Civil Rights Act.

### E. Discrimination Claims Under the NYSHRL and the NYCHRL

#### 1. Plaintiff Adequately Pleads that CFTH Discriminated Against Him in Violation of the NYSHRL and the NYHRL on the Basis of His Gender Identity and Disability

Mr. Ballentine has plausibly pleaded parallel disability-discrimination claims against CFTH under the NYSHRL and NYCHRL. The NYCHRL provides that

> it shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation . . . [b]ecause of any person's actual or perceived race . . . disability . . . sexual orientation, directly or indirectly . . . [t]o refuse, withhold from or deny to such person . . . any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation.

N.Y.C. Admin. Code § 8–107(4)(a). The NYCHRL further requires that "any person prohibited by the [law] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." *Id.* § 8–107(15)(a).

The NYSHRL contains very similar protections. It makes it an unlawful discriminatory practice "for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the race, . . . , color, . . . , sexual orientation, gender identity or expression . . . of any person, directly or indirectly, to refuse, withhold

from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . ." N.Y. Exec. Law § 296(2)(a).

Although NYCHRL claims had for many years "been treated as coextensive with state and federal counterparts," the New York City Council, in passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act") "rejected such equivalence" in favor of a broader remedial scope. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). The Restoration Act established two new rules of construction for the NYCHRL: (1) "a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a *floor* below which the City's Human Rights law cannot fall'"; and (2) a requirement that the NYCHRL provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Restoration Act §§ 1, 7). The Second Circuit has clarified that these amendments to the Restoration Act require courts to analyze NYCHRL claims "separately and independently from any federal and state law claims." *See id.* Furthermore, claims under the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011)).

Prior to 2019, the law governing federal discrimination claims such as Title VII, the ADEA, and the ADA was identical to that governing discrimination claims under the NYSHRL. *See generally Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 n.6 (2d Cir. 2010); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000). However, "[t]he NYSHRL was amended on August 19, 2019 to provide that its provisions should be construed liberally 'regardless of whether federal civil rights law, including those laws with provisions worded comparably to the provisions of this article, have

been so construed.'" *Summit v. Equinox Holdings, Inc.*, No. 20-CV-4905 (PAE), 2022 WL 2872273, at *18 (S.D.N.Y. July 21, 2022) (quoting *Deveaux v. Skechers USA, Inc.*, No. 19-CV-9734 (DLC), 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020)). "In other words, the NYSHRL was amended to 'render the standard for claims closer to the standard under the NYCHRL.'" *Id.* (internal quotation and citation omitted).

Practically speaking, because the NYCHRL, and now the NYSHRL, are more protective than their federal counterparts a claim is "automatically stated" under the NYSHRL and the NYCHRL if it is stated under the ADA, and a claim may be stated under the NYSHRL and the NYCHRL even if that same claim would be dismissed under the ADA. *See Chalas v. Barlean's Organic Oils, LLC*, No. 22-CV-04178 (CM), 2022 WL 17156838, at *4 (S.D.N.Y. Nov. 22, 2022).

Because Plaintiff has stated a claim against CFTH for failing to accommodate his disability under the ADA, he has stated an equivalent claim under the NYSHRL and the NYCHRL. Notwithstanding the difference in the pleading standard for those statutes, however, Plaintiff has not stated a claim against the City for the same reason he failed to state a claim against the City under the ADA—the complaint lacks well-pleaded facts showing that the City or its officers failed to offer him an accommodation or otherwise discriminated against him on the basis of his disability.

Plaintiff has also stated a claim against CFTH under the NYSHRL and the NYCHRL for failing to provide him an accommodation and access to its facilities on the basis of his gender identity and expression. Both the NYSHRL and the NYCHRL protect against discrimination on the basis of a person's gender. And the statutes define gender in an inclusive manner. *See* N.Y. Exec. Law § 292(35) (defining the term "gender identity or expression" to mean "a person's actual or perceived gender-related identity, appearance, behavior, expression, or other gender-related characteristic regardless of the sex assigned to that person at birth, including, but not limited to, the status of being transgender."); N.Y.C. Admin. Code § 8–102 (defining the term "gender" to include

"actual or perceived sex, gender identity and gender expression, including a person's actual or perceived gender-related self-image, appearance, behavior, expression or other gender-related characteristic, regardless of the sex assigned to that person at birth.").

The complaint adequately pleads that CFTH deprived Mr. Ballentine of the use of its facilities as a result of his gender identity. Plaintiff pleads that CFTH staff members "mocked Plaintiff's gender expression" and "used anti-LGBTQ" slurs. *Id.* ¶ 13. They did so shortly before they refused Plaintiff medical attention and "expelled Plaintiff outside in cold temperatures." *Id.* ¶ 14. Later, CFTH allegedly failed to provide Plaintiff the benefits of its services, as it denied him access to parts of the facility other than the common area. *Id.* ¶ 15. The alleged overt expressions of anti-LGBTQ bias by CFTH staff followed by the deprivation of CFTH's services are sufficient to raise a minimal inference of discrimination. Therefore, Plaintiff's claim against CFTH for discrimination on the basis of his gender is adequately pleaded.

#### 2. Plaintiff's Remaining Claims Under the NYSHRL and the NYHRL Are Not Adequately Pleaded

Plaintiff does not, however, adequately plead that the City violated the NYSHRL or the NYCHRL on the basis of his gender. The complaint contains no well-pleaded facts indicating that the City or its officers discriminated against him on the basis of his gender. And Plaintiff has also not adequately pleaded that either CFTH or the City discriminated against him on the basis of his race. As described above in the analysis of Plaintiff's claims under Title VI, the complaint contains only conclusory allegations regarding alleged discrimination against Plaintiff on the basis of his race or color.

### F. Retaliation Claims Under the NYSHRL and the NYCHRL

#### 1. Plaintiff Adequately Pleads that CFTH Retaliated Against Him in Violation of the NYSHRL and the NYHRL

Mr. Ballentine has plausibly pleaded that CFTH retaliated against him in violation of the

NYSHRL and NYCHRL. The version of the NYSHRL in effect as of the date of this opinion makes it unlawful "for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because such person has (i) opposed any practices forbidden under this article, . . . or (iii) requested a reasonable accommodation under this article." N.Y. Exec. Law § 296(7).[9] Similarly, the NYCHRL provides that it shall be unlawful "for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . . [or] (v) requested a reasonable accommodation under this chapter . . . ." New York City, N.Y., Code § 8-107.

The NYCHRL and NYSHRL employ a more liberal pleading standard for a retaliation claim than the ADA. *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025). A plaintiff claiming retaliation must demonstrate that he took an action opposing prohibited practices, or, in the case of the NYCHRL, requested a reasonable accommodation, and that as a result, the defendant "engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (citation and quotation marks omitted).

Plaintiff has adequately pleaded a claim under the NYCHRL for the same reasons that he pleaded a retaliation claim under the ADA. He has adequately pleaded such a claim under the NYSHRL as well, even though his request for an accommodation was not a "protected activity" under that statute at the time of the incidents at issue in this case. That is because, in addition to his

[9] At the time of the events at issue in this case, however, a request for an accommodation did not constitute a protected activity under the NYSHRL. *See, e.g.*, *Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 346 (S.D.N.Y. 2024), *motion to certify appeal denied,* No. 21-CV-7492 (KMK), 2025 WL 2658615 (S.D.N.Y. Sept. 17, 2025) (noting that "New York state intermediate appellate courts have held that a request for reasonable accommodation is not a protected activity under the NYSHRL.") (cleaned up) (collecting cases). The NYSHRL was amended on December 5, 2025 through the Reasonable Accommodation Anti-Retaliation Act, which expressly included a request for a reasonable accommodation as a protected activity. *See* 2025 Sess. Law News of N.Y. Ch. 600 (S. 3398). That modification, however, is not retroactive. *See Dorio v. Cmty. Hous. Mgmt. Corp.*, 245 N.Y.S.3d 921 (N.Y. Sup. Ct. 2026). The Court applies the version of the NYSHRL that was in effect at the time of the incidents alleged in the complaint and, therefore, does not treat Plaintiff's request for an accommodation as a protected activity under the NYSHRL.

request for an accommodation, Plaintiff pleads that he informed CFTH staff that he was lodging complaints with state officials regarding their alleged discrimination shortly before the alleged retaliatory conduct.

#### 2. Plaintiff Does Not Adequately Plead that the City Retaliated Against Him in Violation of the NYSHRL and the NYHRL

Plaintiff has not plausibly pleaded that the City retaliated against him in violation of the NYSHRL and the NYCHRL. His claims fail for the same reasons as his retaliation claim against the City under the ADA—Plaintiff has not alleged that the City took an adverse action against him or treated him less well as a result of any protected activity.

### G. Putative Claim Under Penal Law Section 120.00

There is no private cause of action under Section 120.00 of the New York Penal Law. In his briefing, Plaintiff argues that his complaint states a claim under Section 120.00 of the New York Penal Law. However, as its name implies, that law is a criminal statute. It covers "Assault in the third degree." N.Y. Penal Law § 120.00. The statute provides that "[a] person is guilty of assault in the third degree when: 1. With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or 2. He recklessly causes physical injury to another person; or 3. With criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument." *Id.* "Assault in the third degree is a class A misdemeanor." *Id.* The statute does not expressly provide for a private right of action.

There is no private right of action for a violation of this statute. "In the absence of an express private right of action, plaintiffs can seek civil relief in a plenary action based on a violation of the statute only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (2013) (internal quotations and citation omitted). "This determination is predicated on three factors: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2)

whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Id.* (quoting *Sheehy v. Big Flats Community Day,* 73 N.Y.2d 629, 633 (1989)). The third of these factors is the "most important." *Id.* Therefore, the New York Court of Appeals has "declined to recognize a private right of action in instances where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself." *Id.* at 70–71 (cleaned up).

Penal Law Section 120.00 contains an enforcement mechanism—a criminal sanction. Therefore, no private cause of action can be implied from the statute. *See, e.g., Ong v. Park Manor (Middletown Park) Rehab. And Healthcare Ctr.*, 51 F. Supp. 3d 319, 348 n.19 (S.D.N.Y. 2014) (discussing that a provision of N.Y. Penal Law "cannot form the basis of a civil claim"); *Peterec v. Hilliard*, No. 12-CV-3944 (CS), 2013 WL 5178328, at *8 (S.D.N.Y. Sept. 16, 2013) (holding that "private citizens do not have a private cause of action for criminal violations." (quotation omitted)); *Smith v. N.Y.C. Police Dep't*, No. 06-CV-15436 (JSR) (KNF), 2010 WL 423039, at *5 (S.D.N.Y. Feb. 4, 2010) (holding that "an individual cannot bring a private cause of action for alleged criminal violations."), *report and recommendation adopted*, 2010 WL 2008839 (S.D.N.Y. May 17, 2010); *Moore v. N.Y.C. Dep't of Educ.*, No. 03-CV-2034 (LAP), 2004 WL 691523, at *5 (S.D.N.Y. Mar. 31, 2004) ("These claims [pursuant to N.Y. Penal Law] must be dismissed because plaintiff has set forth no authority to support his claim that a private right of action to enforce rights allegedly created by these provisions exists."). Therefore, Plaintiff may not pursue a claim against either Defendant on the basis of an alleged violation of Penal Law Section 120.00.

### H. Tort Claims Against the City

Plaintiff has not adequately stated any New York State law tort claims that his complaint can be construed to assert against the City because he has not pleaded that he has served a notice of claim as required by New York law. Under New York law, a notice of claim is a condition

precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees. N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1); *C.S.A. Contracting Corp. v. New York City Sch. Constr. Auth.*, 833 N.E.2d 266, 268 (N.Y. 2005); *see also Fincher v. Cnty. of Westchester,* 979 F. Supp. 989, 1002 (S.D.N.Y. 1997). "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (quoting *Fincher,* 979 F. Supp. at 1002).

"The notice of claim must provide, among other things, the nature of the claim and must be filed within ninety days after the claim arises." *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 248 (E.D.N.Y. 2012) (citing N.Y. Gen. Mun. Law § 50-e). "In addition, the plaintiff must plead in his complaint that: (1) he has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or satisfy the claim." *Id.* (citing N.Y. Gen. Mun. Law § 50-i).

"'Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action' for lack of subject-matter jurisdiction." *Tulino v. City of New York*, No. 15-CV-7106 (JMF), 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (quoting *AT&T Co. v. N.Y.C. Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases)). "[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims." *Hardy*, 164 F.3d at 793 (emphasis in original) (citation omitted); *see also Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action." (quoting *Fincher*, 979 F. Supp. at 1002)).

Plaintiff has not pleaded that he served a notice of claim against the City with respect to his putative tort claims. Indeed, these claims were not even expressly referenced in his complaint, but, like the putative Penal Law Section 120.00 claim, appear to have been presented by, or with the

substantial assistance of, the large language model used by Plaintiff to draft his opposition and sur-reply briefs. Accordingly, any New York State law tort claims against the City must be dismissed.

**I. Plaintiff Fails to Adequately Plead Intentional Infliction of Emotional Distress Claim Against CFTH**

Plaintiff fails to state a claim against CFTH for intentional infliction of emotional distress because Plaintiff has failed to adequately plead facts supporting either that CFTH's conduct was sufficiently "outrageous." To state a claim for IIED under New York law, a plaintiff must plausibly allege: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019). IIED is a "highly disfavored [tort] under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 1578 (2d Cir. 2014). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (quoting Restatement (Second) of Torts § 46, comment d). The New York Court of Appeals once observed that, of the IIED claims it had considered, "every one has failed because the alleged conduct was not sufficiently outrageous." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 122 (1993).

Plaintiff has not pleaded any conduct by CFTH that meets "the high threshold for conduct that is 'extreme and outrageous' enough to constitute IIED." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (quotation omitted). "Plaintiff does not bring this claim (or any of his claims) against" the individuals at the homeless shelter who allegedly assaulted him. *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 378 (S.D.N.Y. 2017) (GHW). "Thus, the Court looks not to the allegations concerning those individuals' conduct, but rather to the alleged conduct of" CFTH itself. *Id.* While the alleged conduct by CFTH staff violates the law, as described above, it does not reach

the high standard for extreme or outrageous conduct required to sustain an IIED claim. *See, e.g.*, *James v. Fed. Rsrv. Bank of New York*, No. 01-CV-1106 (RJD) (VVP), 2005 WL 1889859, at *10 (E.D.N.Y. Aug. 8, 2005), adhered to on reconsideration, 471 F. Supp. 2d 226 (E.D.N.Y. 2007) (holding that "[a]lthough plaintiff alleges that she suffered from threats, retaliation, and discrimination, the allegations do not meet the strict standard of outrageousness required to state a claim for intentional infliction of emotional distress.").

### J. Plaintiff Fails to Adequately Plead Negligent Supervision

Plaintiff's complaint does not adequately plead a cause of action against CFTH for negligent supervision. "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ahluwalia v. St. George's U., LLC*, 63 F. Supp. 3d 251, 263 (E.D.N.Y. 2014), *aff'd*, 626 F. App'x 297 (2d Cir. 2015) (unpublished) (quoting *Doe v. City of New York,* No. 09-CV-9895, 2013 WL 796014, at *3 (S.D.N.Y. Mar. 4, 2013), *aff'd*, 558 F. App'x 75 (2d Cir. 2014)).

Any negligent supervision or retention claim against CFTH with respect to its alleged failure to supervise the staff members who allegedly discriminated against him fails because the complaint does not plead that CFTH had knowledge of the individual staff members' propensity to engage in the conduct alleged in the complaint. The complaint's only allegation that touches on this issue is that a nurse at Jacobi told Plaintiff that "the shelter was known for punitive EMS calls against complaining residents." TAC ¶ 17. This allegation does not support the inference that CFTH knew of any propensity by its employees to engage in harmful conduct. Accordingly, the Court dismisses Plaintiff's negligent supervision and retention claim against CFTH.

## V. LEAVE TO AMEND

Although Plaintiff has already amended the complaint three times, he has done so without the benefit of a judicial opinion regarding the sufficiency of his pleadings. Therefore, the Court will grant Plaintiff leave to amend the majority of the claims that the Court has dismissed in this opinion. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "Repeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998). "In general, when assessing whether an amended complaint would state a claim, we consider the proposed amendment[s] . . . along with the remainder of the complaint." *Pyskaty*, 856 F.3d at 225. "Although courts commonly look to proposed amendments to determine futility, . . . courts may consider all possible amendments when determining futility." *Panther Partners Inc.*, 347 F. App'x at 622.

Here, the Court cannot conclude that any amendment could cure the deficiencies identified with respect to Plaintiff's purported claims under Penal Law Section 120.00. Because there is no private right of action under that statute, any attempt to amend the complaint to plead such a claim

would be futile. Accordingly, the Court dismisses Plaintiff's claims Defendants under Penal Law Section 120.00 against both Defendants with prejudice.

The Court will, however, grant Plaintiff leave to amend his other claims to cure the other deficiencies identified herein. Although Plaintiff has amended the complaint three times already, he has not yet done so with the benefit of a judicial opinion. Therefore, given his *pro se* status, it is appropriate to provide him the opportunity to amend his complaint to cure the deficiencies identified in this opinion. Plaintiff is directed that he cannot add any new claims to any amended complaint without prior leave from the Court. Plaintiff is also advised that any amended complaint will completely supersede his prior complaints. Any amended complaint must be filed no later than thirty days after the entry of this order.

## VI. CONCLUSION

For the foregoing reasons, the City's motion to dismiss is GRANTED and CFTH's motion to dismiss is GRANTED in part and DENIED in part.

The Court requests that counsel for the City provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 51 and 54 and to mail a copy of this opinion to Plaintiff by certified mail.

SO ORDERED.

Dated: September 17, 2026
New York, New York

GREGORY H. WOODS
United States District Judge